**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

| | |
|---|---|
| Case No.   **ED CV 26-552-JFW(DTB)** | Date:  February 13, 2026 |

Title:   Khosrow Charkhci -v- Fereti Semaia

---

**PRESENT:  HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Shannon Reilly | None Present |
| Courtroom Deputy | Court Reporter |

| **ATTORNEYS PRESENT FOR PLAINTIFFS:** | **ATTORNEYS PRESENT FOR DEFENDANTS:** |
|---|---|
| None | None |

**PROCEEDINGS (IN CHAMBERS):**   ORDER GRANTING PETITIONER'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER [filed 2/6/26; Docket No. 3]

On February 6, 2026, Petitioner Khosrow Charkhci ("Petitioner") filed an Ex Parte Application for Temporary Restraining Order and Order to Show Cause ("Application").  On February 11, 2026, Respondent Fereti Semaia ("Respondent"), the Warden of the Adelanto Detention Facility, filed a Response.[1]  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument.  The hearing calendared for February 23, 2026, is hereby vacated and the matter taken off calendar. After considering the moving and responding papers, and the arguments therein, the Court rules as follows:

**I.   FACTUAL AND PROCEDURAL HISTORY**

Petitioner is an Iranian citizen who has lived in the United States since 2000.  On February 25, 2003, Petitioner was ordered removed in absentia. On October 11, 2007, Petitioner was placed on an Order of Supervision ("OSUP"). The OSUP provides:  "Because ICE has not effected your deportation or removal during the period prescribed by law, it is ordered that you be placed under supervision and permitted to be at large . . ."  Petitioner reported to each of his ICE check-ins for the last 18 years. Petitioner has no criminal convictions.

On January 23, 2026, Petitioner appeared at his ICE check-in with his attorney, Christopher Reed.  At that check-in, Petitioner was detained without notice. Other than being advised that he had an outstanding final order of removal and that he is being taken into custody, Petitioner was

---

[1]  In his Application, Petitioner seeks a temporary restraining order ("TRO") and an Order to Show Cause why an order for a preliminary injunction should not be granted.  Because Respondent had notice and an opportunity to respond, Petitioner briefed the issues thoroughly, and the standard for a TRO and a preliminary injunction are the same, the Court will treat Petitioner's Application as a motion for preliminary injunction.

not told why his OSUP was being revoked, nor was he provided an opportunity to address any allegations.  As of February 6, 2026, Petitioner has not been provided a formal or informal interview or otherwise given a fair opportunity to contest the revocation of his OSUP.

If Petitioner had been given the opportunity to contest the revocation of his OSUP, he would have informed the arresting officer that: (1) Iran continues to refuse to accept deportees from the United States; (2) he opposes the theocracy in Iran and is afraid to return to Iran due to persecution; (3) he has no valid Iranian passport or travel document, and that obtaining one requires an original Iranian birth certificate, which he does not have; and (4) Petitioner and his attorney have prima facie evidence of Petitioner's ability to adjust his status through his U.S. citizen daughter.

Petitioner is currently detained at the Adelanto Detention Center in California.

On February 6, 2026, Petitioner filed a Petition for Writ of Habeas Corpus (the "Petition"), which alleges that ICE's revocation of his OSUP and his re-detention are unlawful.  Petitioner alleges causes of action for: (1) violation of Petitioner's Fifth Amendment Right to Due Process; (2) Third Country Removal in violation of 8 U.S.C. § 1231, Convention Against Torture, and Implementing Regulations, and the Administrative Procedure Act; and (3) unlawful detention in violation of the Fifth Amendment Due Process Clause, the Immigration and Nationality Act, 8 CFR §§ 241.13 and 241.4, and the Administrative Procedure Act; and (4) Punitive Third Country Banishment in violation of the Fifth and Eighth Amendments.  That same day, Petitioner filed his Application seeking a TRO, ordering Petitioner's immediate release and enjoining Respondent from removing or attempting to remove Petitioner to a third country.

## II.    LEGAL STANDARD

The standard for issuing a TRO and preliminary injunction under Federal Rule of Civil Procedure 65 is the same.  *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve "substantially identical" analysis).  Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Under *Winter*, a plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction."  *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.,* 758 F.3d 1069, 1071 (9th Cir. 2014) (*citing Winter*, 555 U.S. at 20).  Courts in this circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the Winter standard" (*Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021)), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  Under this approach, a TRO may be warranted where there are "'serious questions going to the merits' and a hardship balance . . . tips sharply toward the plaintiff," and so long as the other *Winter* factors are also met.  *Id.* at 1132.

The Ninth Circuit distinguishes between "mandatory" and "prohibitory" injunctions.  *Hernandez v. Sessions*, 872 F.3d 976, 997–98 (9th Cir. 2017).  Prohibitory injunctions maintain the

status quo, preventing further constitutional violations. *Id.* at 997. By contrast, mandatory injunctions go further, ordering "a responsible party to 'take action.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (*quoting Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996)). A mandatory injunction "'goes well beyond simply maintaining the status quo [and is thus] . . . particularly disfavored.'" *Id.* (*quoting Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980)). Accordingly, the Ninth Circuit has held that mandatory injunctions "should not be approved in the absence of a risk of 'extreme or very serious damage.'" *Hernandez*, 872 F.3d at 997 (*quoting Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879). Mandatory injunctions are most likely to be appropriate when "the status quo . . . is exactly what will inflict the irreparable injury upon complainant." *Id.* (*quoting Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 830 n.21 (D.C. Cir. 1984)).

### III.    DISCUSSION

#### A.    Petitioner Has Demonstrated A Likelihood of Success on the Merits

##### 1.    Legal Standard

Under the Immigration and Nationality Act ("INA"), when an alien is ordered removed, the government ordinarily must secure the alien's removal from the United States within a period of ninety days, known as the "removal period." 8 U.S.C. § 1231(a)(1)(A). Certain aliens ordered removed may be detained beyond the ninety-day removal period, including those who are removable for certain criminal offenses, those determined to be a risk to the community, or those unlikely to comply with the order of removal. 8 U.S.C. § 1231(a)(6). However, in *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001), the Supreme Court held that the post-removal-period detention scheme contains "an implicit 'reasonable time' limitation." In other words, "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." *Id.* at 689. The Supreme Court reasoned that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," because "[t]he Fifth Amendment's Due Process Clause forbids the Government to 'depriv[e]' any 'person . . . of . . . liberty . . . without due process of law'" and the Supreme Court made clear that aliens, whether their presence is lawful, unlawful, temporary, or permanent, enjoy due process constitutional protections. *Id.* at 690. Indeed, "[f]reedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that Clause protects." *Id.*

If an alien cannot be removed to their country of origin, federal regulations require ICE to release them from detention on an OSUP if there is no significant likelihood that the alien will be removed in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13(g)–(h); *see also Zadvydas*, 533 U.S. at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute"). In this case, although Petitioner was ordered removed, Petitioner was released on an OSUP on October 11, 2007.

Once ICE releases an alien on an OSUP, "ICE's ability to re-detain that noncitizen is constrained by its own regulations." *See Roble v. Bondi*, 2025 WL 2443453 (D. Minn. Aug. 25, 2025) (finding that ICE had illegally re-detained the petitioner and ordering his immediate release where the petitioner had been ordered removed to Somalia but his deferral of removal under CAT precluded the government from removing him to Somalia and the government failed to demonstrate that there was a significant likelihood that he may be removed in the reasonably

foreseeable future). Specifically, ICE may re-detain an alien released on an OSUP "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2); *see also Nguyen v. Hyde*, 788 F.Supp. 3d 144, 149 (D. Mass. 2025) (concluding that this "case is not about ICE's authority to detain in the first place upon issuance of a final order of removal . . . This case is about ICE's authority to *re-detain* [the petitioner] after he was issued a final order of removal, detained, and subsequently released on an OSUP. The DHS regulation 8 C.F.R. § 241.13(i), applies to noncitizens in [this] situation") (emphasis in the original). In addition, if ICE elects to revoke an alien's release under 8 C.F.R. § 241.13(i)(2), the alien must "be notified of the reasons for revocation of his or her release," and ICE must "conduct an initial informal interview promptly after the alien's return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). At that interview, the alien "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future." *Id.*

    2. <u>Petitioner is Likely to Succeed on the Claims Alleged in His Petition</u>

  The Court concludes that Petitioner has demonstrated a likelihood of success on the merits. ICE's regulations require that when an alien is notified of a revocation of release, the "reasons" for that revocation must be stated in the notification. *See* 8 C.F.R. § 241.13(i)(3). In this case, according to Petitioner's attorney, Christopher Reed (who accompanied Petitioner to his scheduled check-in with ICE), Petitioner was taken into ICE custody without any prior notice or warning and was provided no specific reason for the revocation of his OSUP. Respondent does not refute the contentions in Mr. Reed's declaration. Indeed, in the Response, Respondent merely states: "At this time, Respondent does not have an opposition argument to present." In light of this Response, the Court concludes that Petitioner has demonstrated the he is likely to succeed on the merits of his claim that he is being unlawfully detained in violation of 8 CFR §§ 241.13 (i)(3). Importantly, "courts in this circuit have consistently held that "when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." *Zadori v. Noem*, 2025 WL 3724456, at *4 (C.D. Cal. Nov. 19, 2025) (collecting cases).

  **B.** **Petitioner Has Demonstrated the Likelihood of Irreparable Harm**

  "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (*quoting Elrod v. Burns*, 427 U.S. 347, 373 (1976)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (citation omitted). In addition, the "Ninth Circuit has recognized 'irreparable harms imposed on anyone subject to immigration detention' including 'the economic burdens imposed on detainees and their families as a result of detention.'" *Diaz v. Kaiser*, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (*quoting Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017)). In this case, Petitioner has been unlawfully detained in violation of his due process rights. As a result, Petitioner has suffered irreparable harm as a result of his detention and will continue to suffer the harm absent relief.

  Accordingly, the Court concludes that Petitioner has demonstrated that the likelihood of irreparable harm factor weighs in his favor.

### C.    The Balance of Equities and the Public Interest Factors Weigh in Favor of Petitioner

The last two *Winter* factors – the balance of the equities and public interest analyses – merge when the government is the opposing party.  *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (*citing Nken v. Holder*, 556 U.S. 418, 435 (2009)).  "Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, . . . the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020) (internal quotation omitted).

In this case, Petitioner has demonstrated that he is unlawfully detained in violation of his due process rights and is suffering the harms of immigration detention.  In the absence of any countervailing interests identified by Respondent, the Court concludes that Petitioner's concrete harm outweighs any interest that Responden may have.

Accordingly, the Court concludes that Petitioner has demonstrated that balance of equities and the public interest factors weigh in his favor.

### D.    Bond

Rule 65(c) provides that a court "may issue a preliminary injunction or temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (*quoting Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)).  In particular, "[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."  *Id*. (citation omitted).  As a result, the mandatory language of Rule 65(c) does not "absolve[ ] the party affected by the injunction from its obligation of presenting evidence that a bond is needed, so that the district court is afforded an opportunity to exercise its discretion in setting the amount of the bond." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003). In this case, Respondent has not demonstrated any likelihood of harm if the Court grants the requested relief, and has not requested a bond if that relief is granted.

Accordingly, the Court therefore exercises its discretion and waives the bond requirement under Rule 65(c).

## IV.    CONCLUSION

For all of the foregoing reasons, Petitioner's Application for a TRO and preliminary injunction is **GRANTED**.  Respondent is **ORDERED** to immediately release Petitioner from custody and restore him to the status quo prior to his detention by reinstating his supervision.  Respondent is **ENJOINED** and **RESTRAINED** from removing Petitioner to Iran or any third country or taking him from the Central District of California pending adjudication of his Petition.

IT IS SO ORDERED.